### OAK AMES *vs.* THE NEW JERSEY FRANKLINITE COMPANY and others.

The New Jersey Franklinite Company executed a mortgage to the complainant on certain tracts of land, and by the mistake of the scrivener, certain ores, which by the agreement of the parties should have been excepted, were embraced therein. The company conveyed the mortgaged premises, including the ores, to A. G. and others in trust, as a mortgage security for certain coupon bonds, to be issued by the company. It did not appear that any bonds had been issued. The complainant filed bill of foreclosure, and the trustees, by answer and cross-bill, set up mistake, and claimed exemption of the ores. *Held—*

*First.* That even if the mistake could be set up, a cross-bill was not necessary, but the defendants would be protected by a decree upon the original bill declaring that complainant was not entitled to have the ores sold.

*Second.* That although the mortgagee obtained his lien on the ores by the mistake of the scrivener, there is no reason why he should be compelled to relinquish his security until his debt is paid.

*R. Hamilton,* for complainant.

*R. Green* and *I. W. Scudder,* for defendants.

THE CHANCELLOR. The complainant's bill is for the foreclosure of a mortgage, which covers several tracts of land in the county of Sussex. The property embraced in the mortgage, with the exception of certain ores on or within the mortgage property, were conveyed to the New Jersey Franklinite Company by the complainant. By the agreement of purchase, the company were to secure a part of the purchase money upon the property conveyed to them. The mortgage in question was executed for that purpose in pursuance of the agreement. By mistake of the scrivener, it embraced not only the property which the complainant had conveyed to the company, but the *excepted ores* also, which were not conveyed by the deed, but expressly excepted in it. These *excepted ores* at that time belonged to other parties, who, after the execution of the mortgage, conveyed them to the company. The company afterwards conveyed them, together with the property embraced in the complainant's mortgage, to Ashbel Green and two others in trust, as a mortgage security for certain coupon bonds, to be issued by the company, not to exceed in amount three hundred thousand dollars. The company and the trustees have answered separately. They set up in their answers, and claim that, by reason of the mistake, it should be decreed that the complainant's mortgage does not embrace the *excepted ores,* and that they should not be subjected to a sale to satisfy the mortgage debt. The company filed a cross-bill, praying that the mortgage might be reformed. I do not consider the cross-bill necessary. If, under the circumstances, the defendants are entitled to have the mistake corrected, there is no difficulty in accomplishing that object by a decree upon the original bill, declaring that the complainant, by reason of the mistake, is not en-

titled to have the property in dispute sold to pay his debt. A cross-bill was not necessary for the purpose of relief. Nor was it necessary for the purpose of discovery. Before the passage of the statute, (*Nixon* 92, § 40,) which authorizes a defendant, after he has filed his answer, to exhibit interrogatories to the complainant, which shall be answered by him on oath, and which shall be evidence in the cause in the same manner and to the same effect as the defendant's answer to the complainant's bill, a cross-bill was necessary for the purpose of *discovery*, because, by a settled rule of equity, a complainant in a suit cannot be examined as a witnesss in that suit. *Story's Eq. P.*, § 390; *Mayor of Colchester* v. ———, 1 *P. Williams* 596. A complainant may now be examined under the act of 1849. *Nixon* 887, § 22. But notwithstanding the statute, the party may still file a cross-bill if he pleases. The court, however, ought not to encourage it, as it increases the expense of litigation.

The company, as far as they are concerned, are not entitled to have the mistake corrected. The mortgage has become forfeited. The company owe the debt. Although the complainant obtained a lien upon the property through the mistake of the scrivener, there is no reason why the creditor should be compelled to relinquish his security until his debt is paid. The maxim is, he who asks equity must do equity. The company must pay their debt. That will relieve the property, and the mistake will be corrected without the intervention of this court. It is certainly more equitable that the defendants should be relieved in this way than by a decree of the court.

The trustees are not entitled to any relief. It appears, by their answer, that the mortgage was executed to them as a security for such coupon bonds as the company might issue. They do not allege that any bonds have been issued. The trustees, therefore, hold the lands as mortgagees in trust for the company; and as I have already said, there is no ground for this court's correcting the mistake for the benefit of the company.

But even if there was a debt due secured by the mortgage, I am not clear that it would be equitable, as between the mortgage creditors, that the mistake should be corrected. The debt is due to the complainant, and it ought to be paid out of the defendants' property. If the complainant has acquired a lien, although by mistake, upon what principle is he under any obligation to release it for the benefit of the other mortgagee? The complainant's mortgage was upon record when the second mortgage was given. The creditors, those under the second mortgage, if there are any, knew of the first mortgage, and what property it covered. The record was notice. They became creditors under the second mortgage, subject to the first mortgage, as it stood upon the record. They have no equity, therefore, which is superior to that of the complainant.

The complainant is entitled to a decree, and to have the mortgage premises which are embraced in his mortgage sold to pay his debt.